IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| JULIE A. SU, ) | |
| Acting Secretary of Labor, ) | CIVIL ACTION NO. |
| United States Department of Labor, ) | |
| ) | 6:24-cv-00569-LSC |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| MAR-JAC POULTRY OF ALABAMA, LLC, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Given the irreparable harms related to oppressive child labor, the Fair Labor Standards Act ("FLSA") prohibits the shipment or delivery for shipment into commerce of goods produced at locations where such labor occurs. 29 U.S.C. § 212(a). However, since the Department's Wage and Hour Division ("WHD") discovered oppressive child labor at Defendant's poultry processing plant located at 3301 3rd Ave, Jasper, Alabama 35501 ("the Worksite"), Defendant continues to move goods out of that location, over the objection of the Acting Secretary of Labor and in clear violation of the FLSA. Defendant's continued unlawful and evasive conduct justifies the urgent injunctive relief the Acting Secretary seeks.

During its civil search warrant execution in the early hours of May 1, 2024, WHD found multiple instances in which Defendant had employed oppressive child labor by subjecting minor employees to prohibited and hazardous poultry processing work. WHD found children younger than eighteen-years-old working on the killing floor hanging live chickens on hooks for slaughter and cutting meat from the carcasses, which is a prohibited hazardous occupation for minors. 29 C.F.R. § 570.61. Since discovering these violations in the early morning hours of May 1, 2024,

WHD has notified Defendant on several occasions that it objects to Defendant's movement of goods from the Worksite, including poultry tainted by oppressive child labor. Nevertheless, Defendant has continued to move these goods.

This request is urgent. The FLSA prohibits shipping or delivering for shipment into commerce any goods produced in an establishment where, within 30 days prior to the removal of such goods, such employment occurred. *See* 29 U.S.C. § 212(a). Here, that 30-day window is actively running, and Defendant is refusing to comply. Accordingly, the Acting Secretary has only a highly limited time to stop Defendant from committing these violations. If she is unable to do so, Defendant will not only face no consequences for its violations of the Act but will profit from them – encouraging future violations of the Act and frustrating the purpose of its prohibitions on oppressive child labor. Therefore, the entry of a TRO and PI is both appropriate and necessary.

## BACKGROUND

On March 14, 2024, WHD received information that the Defendant had been employing 15- to 18-year old minors on the processing line hanging live chickens with a hook on the conveyor lines to be slaughtered. Declaration of Lindsey Arnold ("Arnold Dec.") at ¶ 2. WHD subsequently opened an investigation on March 27, 2024, to determine whether the allegations had merit. Arnold Dec. at ¶ 3. WHD discovered at least four minors who, as described below, were each employed in oppressive child labor at the worksite prior to and on May 1, 2024. Arnold Dec. at ¶ 5(c).

First, an individual hereafter identified as Minor 1 worked on the killing floor at the Worksite rapidly mounting chicken carcasses onto hooks along a moving conveyor belt. Declaration of Daniel Roman ("Roman Dec.") at ¶ 4(c). WHD obtained Minor 1's birth certificate

2

and was able to verify that Minor 1 was born in May of 2007. Roman Dec. at ¶ 4(e). Accordingly, Minor 1 is, and was on May 1, 2024, just 16 years old. *Id*.

WHD also identified an individual hereinafter identified as Minor 2 who worked on the killing floor at the Worksite and whose job tasks included eviscerating chicken carcasses. Roman Dec. at ¶ 4(f). WHD obtained Minor 2's school records and was able to verify that Minor 2 was born in January of 2008. Roman Dec. at ¶ 4(h). Accordingly, Minor 2 is, and was on May 1, 2024, just 16 years old. Id.

WHD further determined that an individual hereafter identified as Minor 3 also worked on the killing floor mounting chicken carcasses onto hooks along a moving conveyor belt at the Worksite. Declaration of Kassandra Rountree ("Rountree Dec.") at ¶ 4(c). Minor 3's regular shift began at approximately 11:00 p.m. each day from Sunday through Thursday. Rountree Dec. at ¶ 4(d). During WHD's investigation, the investigator later obtained Minor 3's Guatemalan Consular ID and was able to verify that the minor was born in September of 2006. Rountree Dec. at ¶ 4(e). Accordingly, Minor 3 is, and was on May 1, 2024, just 17 years old. *Id.*

While at the worksite, WHD identified an individual hereinafter identified as Minor 4 working on the killing floor, mounting chicken carcasses onto hooks along a moving conveyor belt. Declaration of Jessenia Diaz Lopez ("Lopez Dec.") at ¶ 4(c). Minor 4's regular shift began at 8:30 p.m. from Sunday through Thursday. Lopez Dec. at ¶ 4(d). WHD subsequently obtained a copy of Minor 4's Alabama vaccination records showing Minor 4 was born in June of 2006. *Id.* Minor 4 is, and was on May 1, 2024, 17 years old. *Id*.

3

**JURISDICTION**

Jurisdiction of this action is conferred upon the Court by Section 17 of the FLSA, 29 U.S.C. § 217 (injunction proceedings), and by 28 U.S.C. § 1345 (proceedings commenced by the United States).

**LEGAL STANDARD**

The temporary restraining order ("TRO") sought by the Acting Secretary is an extraordinary request forced by Defendants' serious and alarming actions of employing minors in hazardous occupations.

To be entitled to a temporary restraining order, a plaintiff must meet a four-part test: (1) a substantial likelihood of success on the merits of his claim; (2) irreparable harm would occur absent the injunction; (3) the harm suffered by the Plaintiff from a denial of the injunction outweighs the harm suffered by the Defendant if the injunction were issued; and (4) no adverse effect to the public interest. *Keister v. Bell*, 240 F. Supp. 3d 1232, 1236 (N.D. Ala. 2017); Fed. R. Civ. P. 65; *see also Hodgson v. Griffin & Brand of McAllen, Inc.*, No. 70-B-65, 1972 WL 834, at *4 (S.D. Tex. Mar. 31, 1972), aff'd, 471 F.2d 235 (5th Cir. 1973) (granting a temporary restraining order where nine minors were working on Defendant's farms, stating an employer may not in good faith take an "ostrich-like attitude" regarding the child labor portions of the FLSA); *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (discussing standard for preliminary injunction); *Johnson & Johnson Vision Care v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002) (discussing standard for preliminary injunction); *United States v. Alabama*, 791 F.2d 1450, 1459 n. 10 (11th Cir. 1986), *cert. denied*, 479 U.S. 1085 (1987).

As set forth below, these circumstances plainly satisfy this test.

## ANALYSIS

**1.  The Acting Secretary is Likely to Succeed on the Merits of her Oppressive Child Labor Claims.**

The Acting Secretary is likely to succeed on the merits of her oppressive child labor claims because Defendant used oppressive child labor at the work site on multiple occasions. Section 12(c) of the Act forbids any employer from employing "any oppressive child labor in commerce or in the production of goods for commerce or in any enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 212(c). Section 12(a) of the Act forbids any "producer, manufacturer, or dealer" from shipping any goods produced in an establishment where oppressive child labor had been employed within 30 days prior to the production of those goods. *Id*. at (c).

For children under the age of 18, Section 203(l) authorizes the Acting Secretary to issue orders declaring specific authorizations to be particularly hazardous; the employment of a child under 18 in such an occupation constitutes oppressive child labor. *Id*. Here, Defendant has employed multiple children under 18 and placed them in particularly hazardous occupations specifically prohibited by child labor regulations.

Hazardous Order 10 ("H.O. 10"), sets forth  which occupations constitute oppressive child labor in the poultry processing facility. 29 C.F.R. § 570.61. Section a(1) of H.O. 10 provides that "All occupations on the killing floor" are "particularly hazardous for the employment of minors between 16 and 18 years of age or detrimental to their health or well-being. *Id*. at (a)(1). Similarly, Section b specifies that killing floor includes  "workroom, workplace where such … poultry… [is]

immobilized, shackled, or killed, and the carcasses are dressed prior to chilling." *Id*. H.O. 10 further identifies occupations involving the operation of poultry scissors or shears or knives, and all "all boning occupations" as particularly hazardous for the employment of minors between 16 and 18 years of age or detrimental to their health or well-being.  Id. at a(4-5). In other words, a child between the ages of 16 and 18 whose occupation is on the kill floor of a poultry processing facility or the removal of bones from meat cuts is engaged in oppressive child labor.

Here, at least four known minors worked at the worksite until May 1, 2024 in hazardous occupations. Minor 1 is, and was on May 1, 2024 16 years old. Roman Dec. at ¶ 4(e).  Minor 1 worked hanging chicken carcasses on the power-driven conveyor belt on the killing floor. Roman Dec. at ¶ 4(c). Similarly, Minor 2's job tasks consisted of eviscerating poultry carcasses on the killing floor of the Worksite. Roman Dec. at ¶ 4(f). Minor 2 was born in January of 2008 and was 16 years old on May 1, 2024. Roman Dec. at ¶ 4(h). WHD also determined that Minor 3 also worked on the killing floor at the worksite hanging chicken carcasses. Rountree Dec. at ¶ 4(c). WHD later obtained Minor 3's Guatemalan Consular ID and was able to verify that he was born in September of 2006. Rountree Dec. at ¶ 4(e) Accordingly, Minor 3 is, and was on May 1, 2024, just 17 years old. *Id*. Minor 3 is, and was on May 1, 2024, 17 years old. As recently as May 1, 2024, Minor 4 worked hanging chicken carcasses on the power-driven conveyor belt on the killing floor. Lopez Dec. at ¶ 4(c-e). Therefore, Minor 1, Minor 2, Minor 3, and Minor 4 were, by definition, engaged in oppressive child labor at Defendant's Worksite until May 1, 2024.

2. **The Acting Secretary is Entitled to a Presumption of Irreparable Injury.**

Under the facts of this case, the Acting Secretary is entitled to a presumption of irreparable injury. When a government agency seeks a TRO pursuant to a statute that expressly authorizes

injunctions, "the usual prerequisite of irreparable injury need not be established and the agency to whom the enforcement of the right has been entrusted is not required to show irreparable injury before obtaining an injunction." *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984) (stating also that that "irreparable injury should be presumed from the very fact that the statute has been violated."); *see also CSX Transportation, Inc. v. Alabama Dep't of Revenue, 888 F.3d 1163, 1181 (11th Cir.)*, opinion modified on denial of reh'g, 891 F.3d 927 (11th Cir. 2018) ("'irreparable injury' requirement does not apply … because [the statute] authorizes injunctive relief without it where the statutory conditions are satisfied."). Here, Sections 12(b) and 17 of the Act, 29 U.S.C. §§ 212(b), 217, expressly authorize the Acting Secretary to bring actions enjoining "any act or practice which is unlawful by reason of the existence of oppressive child labor." 29 U.S.C. § 212(b). The only statutory prerequisite for this injunctive relief is the existence of a child labor violation, i.e. that "any oppressive child labor has been employed" by the party the Acting Secretary is seeking to enjoin. *Id.* at (b). As described above, multiple instances of oppressive child labor occurred in Defendant's Worksite leading up to and including May 1, 2024. Thus, the Acting Secretary is seeking injunctive relief pursuant to a statute expressly authorizing her to do so after all statutory prerequisites have been met. Accordingly, the Acting Secretary is entitled to a presumption of irreparable harm.

Even if the Acting Secretary were not entitled to this presumption, however, the failure to grant a TRO and PI would impose irreparable harm on the Acting Secretary. If this Court were to decline to grant a TRO and PI, the tainted goods in Defendant's possession would pass into the stream of commerce. Once this occurs, there is little likelihood that the goods could be retrieved, and as a result, the goods would have already competed with goods produced in compliance with

the Act. This, in turn, would defeat a "central purpose of the FLSA" – the "exclusion from interstate commerce of goods produced under substandard conditions." *Citicorp Industrial Credit Inc. v. Brock*, 483 U.S. 27, 36, n.8 (1987); *see also Tony & Susan Alamo Foundation v. Secretary of Labor,* 471 U.S. 290, 296 (1985) (recognizing as a goal of the Act "outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency").

This harm to the public would be irreparable. *See Brock v. Rusco Indus., Inc.*, No. CV686-025, 1986 WL 32748, at *1 (S.D. Ga. Mar. 20, 1986) (citing *Ford v. Ely Group, Inc.*, 621 F.Supp. 22, 15-26 (W.D. Tenn. 1985)), *aff'd. sub nom., Brock v. Ely Group, Inc.*, 788 F.2d 1200 (6th Cir. 1986), *aff'd. sub nom., Citicorp Industrial Credit, Inc. v. Brock*, 483 U.S. 27 (1987) (entry of hot goods into the stream of commerce "will result in immediate and irreparable injury or damage to plaintiff and the public interest"); *Brock v. Rusco Indus., Inc.*, No. CV686-025, 1986 WL 32748, at *1 (S.D. Ga. Mar. 20, 1986) *Chao v. Blocker Farming Enterprises, LLC.*, No. 606CV051, 2006 WL 8435752 (S.D. Ga. May 16, 2006) (Finding an FLSA-based TRO was appropriate because the release of hot goods "into the interstate commerce channels obviously will harm honest competitors…"); *see also Chao v. Ladies Apparel, Ltd*., 2002 WL 1217194 (S.D.N.Y. 2002) (holding that irreparable harm exists in hot goods case, where hot goods, once released in commerce "'spread[] and perpetuat[e]…[substandard] labor conditions among the workers of the several States' …[and] unfairly compete with goods produced in conformity with the FLSA'"; these effects "'cannot be undone'") (citations omitted)).  The need for immediate injunctive relief is therefore particularly acute in a "hot goods" case such as the instant matter.

**3.      The Threatened Injury to the Acting Secretary Acting Outweighs any Damage to Defendant.**

The balance of hardships in the instant case supports the granting of the preliminary relief sought, as the injury to the public interest represented by the FLSA from failure to grant injunctive relief far outweighs the hardship any such relief may cause the defendant.  As noted above, the "exclusion from interstate commerce of goods produced under substandard conditions ... is itself a central purpose of the FLSA."  *Citicorp*, 483 U.S. at 36, n.8.  Accordingly, courts have found violations of the FLSA " threatens the welfare of every worker in that firm as well as the workers in competing companies and related industries." *Donovan v. TMC Indus., Ltd.*, 20 B.R. 997, 1006 (N.D. Ga. 1982)*; see also Darby*, 312 U.S. at 109-110 (recognizing the FLSA's purpose "to exclude from interstate commerce goods produced … under conditions detrimental to the maintenance of the minimum standards of living necessary for health and general well-being … as the means of spreading and perpetuating such substandard labor conditions among the workers of the several states).

If injunctive relief does not issue, the hardship to the Acting Secretary Acting will in fact be a hardship to the public. By producing or selling goods made under substandard labor conditions, the employer will compete unfairly with those who comply with the Act.  Unless tainted goods are restrained from movement in commerce there is the potential that the resulting unfair advantage will ultimately force complying employers out of business.  To allow such action on the part of Defendant

> will result in the immediate and irreparable injury or damage to plaintiff and the public interest in that such shipment and movement of goods will make use of the

channels and instrumentalities of interstate commerce to spread and perpetuate an unfair method of competition and interfere with the orderly and fair marketing of goods in commerce.

*Ely Group, Inc.*, 621 F. Supp at 26-27.  If movement of the tainted goods is not restrained, law-abiding enterprises suffer from unfair competition and Defendant will be unjustly enriched. Worse, oppressive child labor will persist as simply a cost of doing business, exposing children to potentially deadly hazard in this and other worksites.  As a result, a long-standing public policy as enacted by Congress will have been thwarted.

On the other side of the equation, the Defendant's hardship from the issuance of injunctive relief is comparatively insubstantial.  This hardship is merely the pecuniary effect of not being able to ship or sell the goods into commerce, goods which do not belong in commerce in the first instance.

As indicated by the foregoing, when comparing the longstanding and important public interests protected by the Acting Secretary against the lack of what would otherwise be unjust enrichment of Defendant, the balance of hardship weighs in favor of the granting of injunctive relief.

4. **Given Defendant's conduct, the Acting Secretary is likely to succeed in proving a disgorgement remedy is necessary.**

Given Defendant's movement of hot goods, the Acting Secretary will likely succeed in proving that disgorgement of ill-gotten gains is appropriate. Moreover, because of Defendant's refusal to refrain from shipping and delivering these goods, disgorgement is necessary as preliminary injunctive relief to deter and remedy violations, given the irreparable harm of having contraband enter commerce. See, infra, 3.

Disgorging funds obtained from the sale of Section 12(a) hot goods advances the purposes of the FLSA. *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 291-92 (1960) ("When Congress entrusts to an equity court the enforcement of prohibitions contained in a regulatory enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief in the light of statutory purposes."). A manufacturer, producer, or dealer who ships hot goods in violation of Section 12(a) creates the types of harm with which Congress was concerned, specifically by perpetuating detrimental labor conditions prohibited by Section 12(c), burdening commerce, and having an unfair commercial advantage over competing businesses that follow the law. *See Su v. L & Y Food, Inc*, No. 2:24-cv-02606-ODW (BFMx)(C.D.Cal. Apr. 1, 2024)(ordering disgorgement of profits from sale of hot goods in child labor FLSA case). By requiring the disgorgement of the ill-gotten gains from the sale of hot goods, a district court removes the economic advantages gained by employing oppressive child labor and/or dealing in illicit goods tainted by oppressive child labor. This also discourages business models that rely on oppressive child labor directly or in their supply chains. Thus, the disgorgement of ill-gotten gains from the sale of Section 12(a) hot goods corrects the harm to the channels of commerce and to competition, *see Citicorp*, 483 U.S. at 36 n.8 ("'[I]nterstate commerce should not be made the instrument of competition in the distribution of goods produced under substandard labor conditions, which competition is injurious to the commerce.'") (quoting *United States v. Darby*, 312 U.S. 110, 115 (1941)).

4.   **The Balance of Equities Tilts Sharply in the Secretary's Favor and an Injunction is in the Public Interest.**

The purpose of an injunction to uphold provisions of the FLSA is not to collect a debt owed by an employer, but "to correct a continuing offense against the public interest." *Wirtz v. Jones*, 340 F.2d 901, 904 (5th Cir. 1965). That is exactly what the Acting Secretary seeks here: a TRO to ensure that the FLSA's oppressive child labor prohibitions are correctly applied. Congress expressly forbade oppressive child labor in the FLSA. 29 U.S.C. § 212(a). It did so "in the interest and for the welfare of the children of the country. The courts are charged, therefore, with the duty to enforce the national policy." *Lenroot v. Kemp*, 153 F.2d 153, 156 (5th Cir. 1946). The Supreme Court has further recognized how critical these regulations are to the public interest, noting that "[a] democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens, with all that implies." *Prince v. Mass.*, 321 U.S. 158, 168 (1944) All the Acting Secretary seeks here is that this Court carry out the duty to which Congress assigned it: issue injunctive relief enforcing the Act's prohibition on oppressive child labor, thereby effectuating the Act's purpose of – and society's interest in – protecting children. Thus, the issuance of a TRO and PI in this case is in the public interest.

## CONCLUSION

The Acting Secretary has met each required element for a TRO and PI. The Acting Secretary is likely to succeed on the merits of her claim because the facts establish that minors were employed in oppressive child labor at the worksite. The Secretary is entitled to a presumption of irreparable harm and, regardless, irreparable harm would occur: entry of tainted goods into the stream of commerce "will result in immediate and irreparable injury or damage to plaintiff and the

public interest." *Ely Group, Inc.*, 621 F.Supp at 26-27. Moreover, Defendant's violations of the FLSA not only "threaten the welfare of every worker" at their plant, but directly harm "workers in competing companies and related industries." *TMC Indus., Ltd.*, 20 B.R. at 1006. Finally, the Acting secretary seeks this injunction "in the interest and for the welfare of the children of the country." *Lenroot v. Kemp*, 153 F.2d 153, 156 (5th Cir. 1946).

Specifically, the Acting Secretary requests that the Court immediately issue an order restraining all defendants and their agents, and all those in active concert and participation with them, as follows:

1. Grant her motion for a temporary restraining order and preliminary injunction;

2. Issue a preliminary injunction enjoining Defendant from transporting, offering for transportation, shipping, delivering, selling, shipping, delivering, or otherwise placing into commerce, any goods worked on/processed/produced in the facility located at 3301 3rd Ave, Jasper, Alabama 35501 from May 1, 2024 until May 31, 2024;

3. Issue a preliminary injunction enjoining Defendant from transporting, offering for transportation, shipping, delivering, selling, shipping, delivering, or otherwise placing into commerce, any goods produced by Defendant as to which the U.S. Department of Labor notifies or has notified Defendant that it has a good faith basis to believe were produced by employees who were employed in oppressive child labor in violation of 29 U.S.C. § 212(a).

4. Issue an Order to disgorge all profits related to any such hot goods shipped or delivered for shipment into commerce from Defendants establishment since May 1, 2024. Such disgorgement must occur within 14 days of the Acting Secretary providing a

calculation of such profits. If Defendants contest the Acting Secretary's calculation, they must file a motion with the Court to establish the amount Defendants must disgorge. Any such motion must be filed within 14 days of receiving a disgorgement calculation from the Acting Secretary. During the pendency of such motion, Defendants shall post a bond in favor of the Acting Secretary in the amount of the disputed calculation or deposit said amount in the Court's registry.

5. Order specified relief to address Defendant's FLSA violations.

Respectfully submitted,

ADDRESS:

Office of the Solicitor
U.S. Department of Labor
61 Forsyth Street, S.W.
Room 7T10
Atlanta, GA 30303

Telephone:
(678) 237-0623
(404) 302-5438 (Facsimile)
Murphy.kristin.r@dol.gov
gainey.john.o@dol.gov
atl.fedcourt@dol.gov

SEEMA NANDA
Solicitor of Labor

TREMELLE I. HOWARD
Regional Solicitor

KRISTIN MURPHY
Acting Counsel

By: /s/ John O. Gainey
    JOHN O. GAINEY
    Trial Attorney

Attorneys for the Acting Secretary of Labor, United States Department of Labor